IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| THE BOARD OF TRUSTEES, in their capacities as trustees of the LABORERS HEALTH AND WELFARE TRUST FUND FOR NORTHERN CALIFORNIA; LABORERS PENSION TRUST FUND FOR NORTHERN CALIFORNIA; LABORERS VACATION-HOLIDAY TRUST FUND FOR NORTHERN CALIFORNIA; and LABORERS TRAINING AND RETRAINING TRUST FUND FOR NORTHERN CALIFORNIA, <br><br> Plaintiffs, <br><br> v. <br><br> BRUNK INDUSTRIES, a California Corporation, <br><br> Defendant. | No. C 18-cv-04367 WHA <br><br> **ORDER RE DEFAULT JUDGMENT** |

**INTRODUCTION**

In this enforcement action brought under the Labor Management Relations Act and Employee Retirement Income Security Act, plaintiffs seek entry of default judgment, an award of outstanding employee benefit contributions, liquidated damages and interest, reasonable attorney's fees and cost of suit, an injunction requiring an audit of books and records, and for the Court to retain jurisdiction (Dkt. No. 20). After carefully reviewing the record, and having had the benefit of oral argument on December 20, 2018, the motion is **GRANTED IN PART**.

**STATEMENT**

An independent employer, defendant Brunk Industries executed a series of agreements with the Northern California District Council of Laborers (the "Union"). Defendant agreed to be bound by all the obligations imposed by various Trust Agreements establishing each of the Plaintiff Trust Funds. As part of these agreements, defendant promised it would pay plaintiffs the hourly amounts required by the agreements for each hour paid for, or worked by, any of the employees who performed any work covered by the agreements. Defendant did not provide written notice (as the agreements require) to terminate its collective bargaining agreement with the Union and so, the agreements continue to be in effect (Dkt. No. 1 ¶ 4, Ex. A at Article II).

More specifically, the agreements provide for prompt payments of all employer contributions to the various Trust Funds. They also provide for liquidated damages, to provide for payments to cover the damages incurred by the Trust Funds in the event of a breach by the employer where it would have been impracticable to ascertain the losses to the Trust Funds. The Trust Funds also provide for interest on all delinquent contributions, attorney's fees, other collection costs, and for the audit of the employers' books and records to permit the plaintiff to ascertain whether or not all fringe benefit contributions have been timely paid as required by the agreements and applicable law. Each of the agreements provide that upon request in writing by the board of trustees, an individual employer will permit an auditor to enter the premises of the employer during business hours to examine and copy books and records and other items, subject to additional limitations (Dkt. No. 1 ¶¶ 5–10).

The complaint, filed and served in July 2018, alleges that defendant submitted electronic contribution reports setting forth the hours worked by the employees. Nevertheless, defendant failed to pay contributions due for work performed by its employees totaling $23,480.42 in fringe benefit contributions. These delinquent contributions arose from work performed between July–October 2017. Plaintiffs requested defendant pay the

2

outstanding balance due. Defendant did not respond to the request. The proof of service and executed summons were filed in August 2018.

Defendant failed to answer or otherwise appear resulting in defendant's default being entered by the Clerk (Dkt. No. 15). Plaintiffs filed the present motion in November 2018, requesting: (1) defendant be ordered to pay contributions in the amount of $25,106.06; (2) defendant be ordered to pay actual damages according to proof; (3) defendant be ordered to pay to plaintiffs their reasonable attorney's fees in the amount of $6,831.00 and plaintiffs' costs of suit in the amount of $584.80; (4) defendant be permanently enjoined and required to timely submit all required monthly contribution reports and contributions due and owing by defendant to plaintiffs; and that (5) the Court retain jurisdiction to allow plaintiffs to seek judgment for any amounts found due and owing as a result of the audit of defendant's books and records conducted after entry of this judgment (Dkt. No. 20 at 1–2).

**ANALYSIS**

**I.　JURISDICTION AND SERVICE OF PROCESS.**

When considering whether or not to enter a default judgment there is "an affirmative duty to look into its jurisdiction over both the subject matter and the parties." *In re Tuli*, 172 F.3d 707, 712 (9th Cir. 1999). Here, two federal statutes provide subject matter jurisdiction. *First*, under 29 U.S.C. § 1132 which empowers ERISA plan fiduciaries to bring civil actions to enforce plan terms. *Second*, under 29 U.S.C. § 185 which grants labor union organizations power to sue employers in federal court. Requirements for personal jurisdiction are also met because defendant is a California corporation that engages in business activities in the Northern District of California.

There is an additional requirement to "assess the adequacy of the service of process on the party against whom default is requested." *Bd. of Trs. of the N. Cal. Sheet Metal Workers v. Peters*, No. 00–0395, 2000 U.S. Dist. LEXIS 19065, at *2 (N.D. Cal. Jan. 2, 2001) (Judge Vaughn Walker). Here, Preston Brunk, the co-occupant of the premises where the person authorized to accept service of process resided, was personally served with the summons and complaint (Dkt. Nos. 6 and 10). The service of process requirements have been satisfied.

3

## II.  DEFAULT JUDGMENT.

After entry of default, a court may exercise its discretion to grant default judgment on the merits of the case. *See Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980); *see also* FRCP 55. The factual allegations of the complaint, except those concerning damages, are deemed to have been admitted by the non-responding party and are taken as true. *Geddes v. United Fin. Grp.*, 559 F.2d 557, 560 (9th Cir. 1977). The following factors may be considered in determining whether or not to enter default judgment: (1) the possibility of prejudice to the plaintiff, (2) the merits of plaintiffs' substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits. *Eitel v. McCool*, 782 F.2d 1470, 1471–72 (9th Cir. 1986).

The majority of the *Eitel* factors support default judgment. *First*, if this motion were to be denied, then plaintiffs would likely be left without a remedy given defendant's failure to appear or otherwise defend this action. *See Pepsico, Inc. v. Cal. Sec. Cans*, 238 F. Supp. 2d 1172, 1176–77 (C.D. Cal. 2002) (Judge Nora Margaret Manella). *Second*, because defendant has not answered the complaint or otherwise appeared in this action, the possibility of a dispute concerning material facts is unknown. *Third*, plaintiffs properly served defendant and there is no evidence in the record that defendant's failure to appear and otherwise defend this action was the result of excusable neglect. *Fourth*, the sum of money being sought by plaintiffs is reasonable in that it is sought pursuant to a collective bargaining agreement and plaintiffs seek amounts owed based on defendant's specific contractual obligations under the agreements to which it is bound. As such, because the amounts due are with respect to defendant's unfulfilled contract obligations and are reasonably proportionate to the harm caused by defendant's breach, this factor supports the entry of default judgment. *Finally*, although the seventh *Eitel* factor, which favors decisions on their merits, weighs against default judgment, this factor is not dispositive.

4

Having determined that on balance the *Eitel* factors discussed above support plaintiffs' motion, this order turns to the merits of plaintiffs' substantive claims and the sufficiency of the evidence (the second and third *Eitel* factors). These factors require plaintiffs to state a claim on which it may recover. *Danning v. Lavine*, 572 F.2d 1386, 1388 (9th Cir. 1978). The Complaint seeks a finding of liability as to defendant for the failure to remit payment of fringe benefit contributions to the Trust Funds.

The amounts sought by plaintiffs are based on contribution reports submitted by defendant. The Trust Funds and their counsel notified defendant of its outstanding delinquency, but defendant failed to make payment of its delinquent contributions (also despite mounting interest charges). These allegations are sufficient to state a claim under Federal Rule of Civil Procedure 8(a). See 29 U.S.C. § 1145 ("Every employer who is obligated to make contributions to a multiemployer plan under the terms of the plan or under the terms of a collectively bargained agreement shall, to the extent not inconsistent with law, make such contributions in accordance with the terms and conditions of such plan or such agreement"). The claims are further substantiated by the factual record. Thus, accepting all factual allegations as true, plaintiffs have stated a claim for relief.

Defendant breached its agreement with plaintiffs when it failed to pay contributions for the periods listed above. Defendant's default triggered the filing of the instant suit for recovery, in response to which defendant has taken no action. Based on the foregoing, plaintiffs are entitled to default judgment on this claim against defendant.

**III.    DAMAGES, AUDIT, AND ATTORNEY'S FEES.**

Under ERISA, an employee benefit plan that obtains judgment in its favor in an action under 29 U.S.C. § 1132(g)(2) shall be entitled to the following forms of relief: (1) unpaid contributions; (2) interest on the unpaid contributions; (3) liquidated damages, not in excess of 20% of the unpaid contributions; (4) reasonable attorney's fees and costs; and (5) other legal or equitable relief in the discretion of the court. The Court must use its discretion and consider plaintiffs' requested relief in light of the statute.

### A. Damages

The complaint alleges damages in the sum of $25,106.06. These damages reflect unpaid contributions in the following months: July 2017 ($2,144.36); August 2017 ($16,583.34); September 2017 ($5,515.38); and October 2017 ($863.04) (Dkt. Nos. 21-4; 21 at 5). Plaintiff has submit spreadsheets sent by defendant that assessed each monthly amount.

A number of numerical discrepancies exist. *First*, as alleged, the sum of the amounts owed equals $25,106.12, not $25,106.06. *Second*, when taking a closer look at the amount claimed for August 2017, a discrepancy exists between the Lauziere Declaration (Dkt. No. 21), the invoice, and plaintiff's motion for default judgment. The complaint itself is silent as to the individual monthly amounts claimed. In addition, plaintiffs' motion does not apply any damages analysis — instead relying on a block quote from the statute.

As reflected above, the declaration asserts the amount owed in August 2017 as $16,583.34, which can be calculated by adding the figures in the invoice for August 2017 (Dkt. No. 21-4 at 4). But the amount hand-written on the invoice and the specific number requested for August 2017 in the motion for default judgement is $14,957.64. Thus, despite the discrepancy, this order adopts the $14,957.64 figure as the amount claimed as owed for fringe benefit contributions in August 2017 as indicated by defendant's purported self-reporting. Plaintiffs will accordingly be granted damages in the adjusted amount of $23,480.42 for the months July–October 2017 (consistent with the handwritten figure on the invoice for August 2017 and the amounts specified in the motion for default judgment).

### B. Audit and Continuing Jurisdiction.

Plaintiffs also seek to conduct a further audit of defendant's records to discover whether or not additional amounts are due. In addition, plaintiffs request that the Court retain jurisdiction to ensure payment of any delinquent amounts discovered during such audit. Where a collective bargaining agreement gives trustees of an employee benefit plan the right to audit an employer's books and records, it will be enforced. *See Santa Monica Culinary Welfare Fund v. Miramar Hotel Corp.*, 920 F.2d 1491 (9th Cir.1990). Additionally, in ERISA cases, courts may retain jurisdiction to adjust the damages award following an audit.

*See*, *e.g.*, *Board of Trustees v. RBS Washington Blvd. LLC*, No. 09-0660 WHA, 2010 WL 145097, at *6–7 (N.D. Cal. Jan. 8, 2010).

Defendant signed (and was therefore bound by) an employer agreement remitting contributions to plaintiffs. Thus, defendant must submit to an audit to ensure compliance with those agreements especially as related to properly substantiated additional delinquencies. Still, for a district court's contempt power to apply to this injunction, defendant must "receive actual notice of it by personal service or otherwise." FRCP 65(d)(2). Plaintiffs are thus instructed to provide proper service of this order to defendant no later than **JANUARY 24, 2019**. Plaintiffs shall also file a copy of the proof of service no later than **JANUARY 31, 2019**. Only after such service occurs and proof of service is filed will the injunction take effect.

### C. Attorney's Fees and Costs.

Plaintiffs reasonably request $6,831.00 in fees and $584.80 in costs. The agreement provides that if an employer fails to abide by the terms of the agreement with regard to fringe benefit payment, and legal consultation is sought by the board of trustees, reasonable attorney's fees, costs and all other expenses incurred in enforcing collection will be paid by the delinquent employer. Based on this explicit contractual term, defendant should be held liable for reasonable cost of attorney's fees and costs incurred by the plaintiffs in seeking to collect the delinquencies and compel the audit at issue. *See Kemner v. District Council of Painting and Allied Trades No. 36*, 768 F. 2d 1115, 1120 (9th Cir. 1985). Furthermore, under ERISA, the plaintiffs are entitled to a mandatory award of attorney's fees. 29 U.S.C. 1132(g)(2)(D).

Plaintiffs have also substantiated their request with a declaration, attached exhibits, and a detailed ledger. The ledger clearly explains the amount of time expended (17.65 hours), and the declaration sets out the qualifications of the attorneys and paralegals who performed work on the case.

**CONCLUSION**

Based on the foregoing, the motion for default judgment is **GRANTED IN PART**. Default judgment is hereby entered in favor of plaintiffs in the amount of $23,480.42 in damages, $6,831.00 in fees, and $584.80 in costs. Judgment will be entered separately.

In addition, plaintiffs' requests for injunctive relief and continued jurisdiction are **GRANTED** to the following extent: by no later than **JANUARY 24, 2019**, plaintiffs are instructed to provide proper service of this order to defendant; by no later than **JANUARY 31, 2019**, plaintiffs shall file a copy of the proof of service; and by **MAY 31, 2019**, defendant is required to submit to an audit. Only once service occurs and proof of service is filed will the injunction take effect.

**IT IS SO ORDERED.**

Dated: December 27, 2018.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE